# EXHIBIT C

**Secured Promissory Note**

$ 750,000                                                                                                          June 13, 2024

FOR VALUE RECEIVED, **Eteros Technologies USA, Inc.**, a Washington corporation with offices at 6175 South Sandhill Road, Unit 600, Las Vegas, NV 89120 (the "**Maker**"), hereby unconditionally promises to pay to the order of Bloom Automation, Inc., a Delaware corporation, or its assignee or designee (the "**Payee**") the principal sum of Seven Hundred and Fifty Thousand United States Dollars (US $750,000) in the manner set forth herein.  This Note is being issued in connection with the purchase by the Maker of all or substantially all of the assets of the Payee under that certain Asset Purchase Agreement dated as of June 2, 2022 by and between the Maker and the Payee (the "**Purchase Agreement**") and would replace all prior Secured Promissory Notes. All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Purchase Agreement.

1.      Repayment.  Payment of principal and interest on this Note shall be due and payable in twenty-four (24) equal installments of Thirty-four Thousand Six Hundred Dollars ($34,600.00), payable on the last day of each calendar month after the date hereof (each a "**Payment Date**"), commencing June 30, 2024 through to and including May 31, 2026 (the "**Maturity Date**"), on which Maturity Date the entire remaining balance of principal then unpaid on this Note, and all accrued and unpaid interest and other charges, shall become due and payable.  Each payment hereunder shall be paid and credited first to interest and other charges due hereunder then due and the remainder to principal, in accordance with this Note, and interest thereon shall cease to accrue upon the principal so credited.  Payments shall be made to the Payee at such address as the Payee may designate in writing, or shall, at Payee's request, be made by wire transfer of immediately available US funds to the account designated by Payee.  Whenever any payment or other obligation hereunder shall be due on a day other than a business day, such payment shall be made on the next succeeding business day. For purposes of this Note, a "business day" means a day on which banks in Las Vegas, Nevada and Boston, Massachusetts are open for business.

2.      Interest.

        Interest will be paid monthly per the attached Schedule A.

        All principal amounts due and not paid hereunder by the applicable Payment Date shall bear interest at the rate of one percent (1.25%) per month, (the "**Default Interest Rate**"), until such related principal payment has been paid in full.

3.      Prepayment.

        This Note may be prepaid at any time, in whole or in part, without penalty or premium.

4.      Events of Default; Remedies.

        (a)      Each of the following shall be considered an "Event of Default" hereunder:

                (i)      the failure of Maker to pay any amount due under this Note on the related Payment Date, and such amount, plus related Default Interest, is not paid within five (5) days of the related Payment Date;

(ii)    the default by Maker of any of its other material covenants or agreements under this Note or the Purchase Agreement, which default is not cured within thirty (30) days after written notice of such default is given by Payee;

(iii)    if Maker files in any court, tribunal or agency pursuant to any statute, law or regulation of any state or country, a petition in bankruptcy or insolvency or for reorganization or for an arrangement or for the appointment of a receiver or trustee of Maker, or of its assets, or if Maker proposes a written agreement of composition or extension of its debts, or if Maker is served with an involuntary petition against it, filed in any insolvency proceeding, and such petition is not dismissed within thirty (30) days after the filing thereof, or if Maker proposes or is a party to any dissolution or liquidation, or if Maker makes an assignment for the benefit of creditors;

(iv), if a tax or a governmental lien is asserted or filed against Maker or its assets, or if Maker is in default under any loan, note, credit facility or debt it owes;

(v)    if Maker makes a loan or enters into any credit facility or borrows money in excess of $500,000.00 in the aggregate without first having obtained the written consent thereto by Payee after full disclosure, which consent shall not be unreasonably withheld; and

(b)  Upon the occurrence of an Event of Default, the entire outstanding principal balance and all accrued and unpaid interest on this Note shall, at the option of Payee upon notice to Maker, become forthwith due and payable; provided, however, that the amounts described above shall immediately accelerate and become due and payable without the requirement of any action on the part of Payee upon the occurrence of any Event of Default listed in clause 3(a)(iii) above.

5.    Acceleration Upon Sale of Maker.

This Note shall accelerate and become immediately due and payable in full upon any sale of all or substantially all of the assets or capital stock of, or other equity interests in, Maker or the Business (a "**Sale**").

6.    Security Interest; Security Agreement.

(a)    Grant of Security Interest.  As collateral security for the obligations of Maker to pay to Payee all amounts owed or to become owed under this Note (collectively, the "**Obligations**"), Maker hereby grants to Payee (in such capacity, the "**Secured Party**") Security interest subject and subordinate to the security interests granted by the Maker's in favor of its current lender CWB in all of Maker's present and future right, title and interest in and to any and all of the following property whether now existing or hereafter created, and all products and proceeds thereof (collectively, the "**Collateral**"):

(i)    All Acquired Assets purchased under the Purchase Agreement; and

(ii)    All of Maker's assets, including without limitation, accounts, contract rights, chattel paper, general intangibles, choses in action, documents, instruments and "investment property" (as defined and as referred to in Article 8 and Article 9 of  the applicable Uniform Commercial Code as in effect as of the date hereof and as such may be amended in the future (the "UCC")); all obligations owing to Maker; all of Maker's

Page **2** of **6**

goodwill, all inventory, including raw materials, work in process, and other tangible personal property held for sale or lease or furnished or to be furnished under contracts if service or used or consumed in Maker's business, wherever located, whether now existing or hereafter arising, now or hereafter received by or belonging to Maker, and in the proceeds and products thereof.

(b)    Further Assurances.  Maker shall promptly make, execute and deliver to the Secured Party such instruments, documents and certificates and perform such acts and assurances, as the Secured Party may request to perfect, to maintain the priority of, and/or from time to time to renew, the Secured Party's security interest in and to the Collateral, to confirm or more fully perfect the rights granted hereby, or in any way to assure to the Secured Party all of its rights hereunder.  Maker authorizes the Secured Party to execute and make all filings and recordings in public offices or records to perfect the Secured Party's interest in the Collateral, and Maker shall, upon request of the Secured Party, make, execute and deliver such other and further instruments, and take such other and further actions, as the Secured Party may deem necessary or appropriate to enable it to realize upon the Collateral, to exercise fully its rights hereunder, and to ratify and confirm any sale hereunder.

(e)    Rights; Rights Cumulative.  Upon any Event of Default hereunder, the Secured Party shall have all rights afforded to a secured party under the UCC, including without limitation the right to sell the Collateral.  The rights and remedies of the Secured Party herein provided or provided under any other agreement or instrument, or otherwise available, are cumulative, and are in addition to and not exclusive of or in limitation of any rights and remedies provided by law, including, without limitation, the rights and remedies of a secured party under the UCC.

(f)    Specific Performance; Injunctive Relief.  Maker agrees that Maker's obligations and the rights of the Secured Party hereunder and under the Obligation may be enforced by specific performance hereof and thereof and temporary, preliminary and/or final injunctive relief relating hereto and thereto, without necessity for posting any bond or proof by the Secured Party that the Secured Party would otherwise suffer irreparable harm, and Maker hereby consents to the issuance of such specific injunctive relief.

(g)    Costs.  All costs and expenses, including without limitation, legal, filing and service costs and attorneys' fees, and related expenses incurred by the Secured Party in enforcing this Note and the Obligations shall be added as an additional Obligation herein and chargeable to and secured by the Collateral.

7.    Miscellaneous.

(a)    The Maker will pay on demand all costs and expenses of collection, including reasonable attorneys' fees incurred or paid by the Payee in enforcing this Note on default.

(b)    Except as otherwise provided herein, Maker hereby waives presentment, demand, notice, protest, and all other forms of demand and notice, in connection with the delivery, acceptance, performance, default or enforcement of this Note.

(c)    No delay or omission by the Payee in exercising any right or power hereunder shall operate as a waiver of such right or power or of any other right or power.  A waiver of any such right or power on one occasion shall not be construed as a waiver of, or a bar to, the exercise of such right or power on any other occasion.  No consent, approval or waiver hereunder or pursuant hereto shall be binding unless in writing and signed by a duly authorized officer of Payee.

(d)     This Note constitutes the entire agreement between the Parties with respect to the subject matter hereof and referenced herein, and supersedes all prior agreements or understandings between the parties (written or oral) with respect to the subject matter hereof.

(e)     All rights of Payee hereunder, including as Secured Party, shall inure to the benefit of Secured Party's successors and assigns, and this Note and the security agreement set forth in Section 5 hereof shall bind Maker's legal representatives, successors and assigns.

(f)     If any provision hereof shall be invalid or unenforceable in any respect or in any jurisdiction, the remaining provisions hereof shall remain in full force and effect and shall be enforceable to the maximum extent permitted by law.

(g)     This Note shall be governed by and construed in accordance with the substantive laws of The Commonwealth of Massachusetts, without reference to its conflict of laws principles, and in any litigation in connection with, or enforcement of, this Note, or any endorsement or guaranty of this Note or any security given for payment hereof.  Notwithstanding the foregoing, the laws of the jurisdiction where any of the Collateral is situated or otherwise has a situs will apply to the perfection, disposition, and realization upon such Collateral.

(h)     All disputes under or actions to enforce the provisions of this Note and security agreement shall be adjudicated in the courts situated in Suffolk or Middlesex County, Commonwealth of Massachusetts, except only such proceedings, litigation, foreclosure, attachment, sale or other matters pertaining to the Collateral shall, where required, be adjudicated or litigated in the courts situated where the Collateral is located.

(i)     Maker represents that all of the Collateral is currently located or deemed to be located at its principal place of business in Las Vegas, NV identified above.  Maker shall promptly notify Payee in writing if and to where any such Collateral is moved from that location, except if the Collateral is sold by Maker for full value, in which case the proceeds thereof shall become part of the Collateral.

(j)     Maker shall not change or amend its legal name, nor operate under a different name, nor change the location of its principal place of business without first obtaining the written consent of Payee, which shall not be unreasonably withheld.

[*Signature Page Follows*]

IN WITNESS WHEREOF, and intending to be legally bound hereby, Maker has executed this Secured Promissory Note as an instrument under seal as of the date set forth above.

DocuSigned by:

*Aaron McKellar*

4AE28E0906A1488...

Aaron McKellar

_____

Founder & CEO

*On behalf of Eteros Technologies USA, Inc.*

DocuSigned by:

*Kip Clifton*

DACD76C6099D43F...

Kip Clifton

_____

General Partner and Co-Founder, Presidio View Capital

*On behalf of Bloom Automation Inc.*

Schedule A

|    |            | Opening     | Payment   | Principal | Interest | Ending      |
|----|------------|-------------|-----------|-----------|----------|-------------|
| 1  | 2024-06-30 | 750,000.00  | 34,600.00 | 28,365.70 | 6,234.30 | 721,634.30  |
| 2  | 2024-07-31 | 721,634.30  | 34,600.00 | 28,601.49 | 5,998.51 | 693,032.81  |
| 3  | 2024-08-31 | 693,032.81  | 34,600.00 | 28,839.23 | 5,760.77 | 664,193.58  |
| 4  | 2024-09-30 | 664,193.58  | 34,600.00 | 29,078.96 | 5,521.04 | 635,114.62  |
| 5  | 2024-10-31 | 635,114.62  | 34,600.00 | 29,320.67 | 5,279.33 | 605,793.95  |
| 6  | 2024-11-30 | 605,793.95  | 34,600.00 | 29,564.40 | 5,035.60 | 576,229.55  |
| 7  | 2024-12-31 | 576,229.55  | 34,600.00 | 29,810.15 | 4,789.85 | 546,419.40  |
| 8  | 2025-01-31 | 546,419.40  | 34,600.00 | 30,057.94 | 4,542.06 | 516,361.46  |
| 9  | 2025-02-28 | 516,361.46  | 34,600.00 | 30,307.80 | 4,292.20 | 486,053.66  |
| 10 | 2025-03-31 | 486,053.66  | 34,600.00 | 30,559.73 | 4,040.27 | 455,493.94  |
| 11 | 2025-04-30 | 455,493.94  | 34,600.00 | 30,813.75 | 3,786.25 | 424,680.18  |
| 12 | 2025-05-31 | 424,680.18  | 34,600.00 | 31,069.89 | 3,530.11 | 393,610.30  |
| 13 | 2025-06-30 | 393,610.30  | 34,600.00 | 31,328.15 | 3,271.85 | 362,282.14  |
| 14 | 2025-07-31 | 362,282.14  | 34,600.00 | 31,588.57 | 3,011.43 | 330,693.58  |
| 15 | 2025-08-31 | 330,693.58  | 34,600.00 | 31,851.14 | 2,748.86 | 298,842.43  |
| 16 | 2025-09-30 | 298,842.43  | 34,600.00 | 32,115.90 | 2,484.10 | 266,726.53  |
| 17 | 2025-10-31 | 266,726.53  | 34,600.00 | 32,382.86 | 2,217.14 | 234,343.67  |
| 18 | 2025-11-30 | 234,343.67  | 34,600.00 | 32,652.04 | 1,947.96 | 201,691.63  |
| 19 | 2025-12-31 | 201,691.63  | 34,600.00 | 32,923.46 | 1,676.54 | 168,768.17  |
| 20 | 2026-01-31 | 168,768.17  | 34,600.00 | 33,197.13 | 1,402.87 | 135,571.04  |
| 21 | 2026-02-28 | 135,571.04  | 34,600.00 | 33,473.08 | 1,126.92 | 102,097.96  |
| 22 | 2026-03-31 | 102,097.96  | 34,600.00 | 33,751.32 | 848.68   | 68,346.64   |
| 23 | 2026-04-30 | 68,346.64   | 34,600.00 | 34,031.88 | 568.12   | 34,314.76   |
| 24 | 2026-05-31 | 34,314.76   | 34,600.00 | 34,314.76 | 285.24   | 0.00        |

|  | | $ 830,400.00 | $ 750,000.00 | $ 80,400.00 |
|--|--|--------------|--------------|-------------|