

Beck Reed Riden LLP
155 Federal Street | Suite 1302
Boston | Massachusetts 02110
Tel. (617) 500-8660 | Fax (617) 500-8665
BeckReedRiden.com

Stephen Riden
Direct: (617) 500-8672
sriden@beckreed.com

May 1, 2025

**BY EMAIL & FIRST-CLASS MAIL**

Jon T. Gowa
14 Tainter Street, Unit 3
Medford, MA 02155-2621
*jongowa@gmail.com*

October Automation, Inc.
84 West Broadway, Suite 200
Derry, NH 03038

Re:     Your Continuing Obligations to Eteros Technologies USA, Inc.

Dear Mr. Gowa:

This firm has been retained as trade secrets counsel to Eteros Technologies USA, Inc. and its parents and affiliates ("Eteros" or the "Company") in connection with your apparent breach of your post-employment obligations to Eteros. Specifically, Eteros has learned that, after you were terminated from Eteros on January 18, 2023, you began working for October Automation, Inc. ("October"), which is now selling a product that appears to be nearly identical to one that you were responsible for designing and developing while you were employed by Eteros. More to the point, Eteros believes that you misappropriated its trade secrets and other intellectual property to continue developing and manufacturing this product after your termination from Eteros for the benefit of yourself and October.

Your misconduct is a flagrant violation of your contractual obligations to Eteros and applicable statutory and common law. In light of your misconduct, I am writing to determine if this situation can be quickly and amicably resolved, and if Eteros's legitimate business interests can be protected, absent judicial intervention.

While I do not intend, at this juncture, to engage in a lengthy analysis of the claims that Eteros may have against you or any other potentially responsible parties, please be advised that if the facts are as I understand them, your conduct constitutes, at a minimum, a breach of your contractual obligations and misappropriation of trade secrets. ***This letter constitutes a formal demand that any such activity cease immediately.***



Briefly, the facts as I understand them are as follows:

### YOUR EMPLOYMENT WITH ETEROS

You became an employee of Eteros as part of Eteros's acquisition of your previous employer, Bloom Automation, Inc. ("Bloom") in June 2022. As a result of the acquisition, all of Bloom's assets, including its intellectual property, became the property of Eteros. Bloom's primary asset at the time was an automated trimming machine, which could hold and rotate a plant's branch while a robotic arm trimmed off its leaves. After the Bloom acquisition, Eteros disclosed to you that it planned to use this technology by redeploying it into an AI-assisted system (conceived of by Eteros) for sorting and grading cannabis.

You held the position of Technical Director – Robotics and AI, at Eteros's office in Woburn, Massachusetts, throughout your tenure with Eteros. In that role, you were responsible for, among other things, designing, building and testing mechatronic features and prototypes, including both software and hardware. You were also responsible for working with Eteros's broader Research & Development and Product Engineering team to move such designs from concept to production. In support of your work for Eteros, you were provided with ongoing access to highly sensitive information that is proprietary to the Company, including trade secrets and other confidential information concerning its AI technology, code, and designs and products under development.

In connection with your hiring by Eteros, you signed an Employment Agreement (the "Agreement"), a copy of which is enclosed, containing, among other things, reasonable nondisclosure restrictive covenants. You expressly agreed that:

> ...*during [your] employment with the Company and at all times thereafter*, [you] shall hold the Confidential Information in strict confidence and *shall not disclose or allow to be disclosed the Confidential Information[1] to any person, firm, corporation or entity* other than to persons engaged by the Company or its affiliates to further the Business and the business of the Company's affiliates, and that [you] *shall not use the Confidential Information* except in the pursuit of the Business, the business

---

[1] "Confidential Information" is defined within the Agreement to include "all confidential and proprietary information of or relating to the Company and its affiliates not generally available to the public, including without limitation information derived from reports, investigations, processes, research, techniques, work in progress, drawings, designs, plans, proposals, codes, marketing and sales programs, client lists, client mailing lists, financial statements, accounting information, financial projections, cost summaries, pricing formulas, banking information, personal information, information related to the Business, products or sales of the Company or its affiliates, or any of their respective customers." Agreement, § 4.1(ii).



**Beck Reed Riden** LLP

of the Company's affiliates, and the Services without the prior written consent of the Company, ***including in all cases Confidential Information developed by [you]***.

Agreement, § 4.2 (emphasis added).

You also acknowledged and agreed that any Work Product[2] made by you during your employment with Eteros shall be the "sole and exclusive" property of the Company, and you assigned to the Company all "rights, title, and interest" that you had then or in the future in any such Work Product. *See* Agreement, § 4.5.

You further agreed to "not remove from the premises of the Company any Confidential Information at any time without first obtaining the express written permission of the Company on a case-by-case basis." *Id.*

In addition, you agreed that you would "promptly deliver" all Confidential Information and other Company property upon the Agreement's termination for any reason, and that you would not "take or retain possession of any of the Company's property or any other documents or other information, or any reproduction or excerpt thereof, containing or pertaining to any Confidential Information." Agreement, § 4.6

These restrictions are specifically designed to prevent you from using, disclosing, or otherwise misappropriating trade secrets and other confidential information that you obtained or learned through your employment with Eteros.

Indeed, you acknowledged that these restrictions are reasonable and necessary to protect Eteros's legitimate interest in its Confidential Information and goodwill. *See* Agreement, §§ 5, 6. You accordingly agreed that Eteros shall be entitled to preliminary injunctive relief to prevent any violations of such provisions and to obtain specific performance and/or monetary damages for any breaches of the Agreement. *See* Agreement, § 5.

---

[2] "Work Product" is defined to mean "any trade secrets, inventions, mask works, ideas, processes, formulas, other works of authorship, know-how, improvements, developments, techniques, programs, designs and discoveries, and any improvements thereto, which relate, directly or indirectly, to the Business that are (i) made (regardless of location) by [you] in and during [your] employment with the Company, solely or jointly with others, or (ii) made (regardless of location) by [you] during [your] employment with the Company, solely or jointly with others, with the Company's equipment, supplies, facilities, trade secrets, or patents or any equipment, supplies, facilities, trade secrets or patents supplied by a third party in connection with the Business." Agreement, § 4.5.



Please be aware that these contractual obligations are in addition to the rights and protections available to Eteros under state and federal trade secret laws, including the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and other applicable laws.

### YOUR MISCONDUCT

On January 18, 2023, Eteros terminated your employment and closed its Woburn office due to an array of ongoing performance issues, including your drug use during the workday and in the workplace, unprofessional conduct, and work product issues and delays. Aaron McKeller, Eteros's Chief Executive Officer, Ryan Bjergso, Eteros's Vice President of Operations, Terry Leeflang, Eteros's Director of Engineering, and Tony Pavicic, Eteros's Project Director, were all onsite that day to convey the termination decision and assist with transitioning your duties and closing the Woburn office.

To say that you did not handle this news well or in a professional manner is a severe understatement. In response to learning that your employment with Eteros was being terminated and that the project you had been working on for Eteros was being cancelled, you immediately denied that Eteros owned any of the technology and announced that you would continue the project. You incorrectly asserted that noncompete agreements had been abolished in the United States. You then proceeded to yell obscenities at, and were aggressively insulting to, McKellar, Bjergso, Leeflang, and Pavicic. You engaged in physically threatening conduct, which included holding out your open palm just inches from McKellar's face, as if you were going to hit him. You also attempted to destroy Company and personal property by throwing laptops to the ground, attempting to bend the screen of Pavicic's laptop, and taking Pavicic's cell phone from his hand, trying to snap it in half, and resisting efforts to retrieve it. You then removed a filing cabinet and other items from the office and, when Pavicic repeatedly asked you for logins and passwords to access the Company's systems, you refused and announced that everything was backed up on the cloud (implying that you had would have access to everything and turn over nothing to Eteros). Throughout this time, you were observed taking hits of cannabis and becoming increasingly aggressive and belligerent with each hit. Eteros was so concerned by your behavior (and that you would return to the office to carry out an act of violence) that it contacted the local police.

In the aftermath of your departure and while Eteros was cleaning and organizing the contents of the Woburn office, Eteros discovered a sizable stash of cannabis and drug paraphernalia in your office, mechanical components in disrepair (air compressors, vacuum cleaners, conveyers, test bench, trimming robot), and mini fridges unplugged and containing rotten food. The state of the Woburn office under your management confirmed to Eteros that it had made the right decision in terminating your employment, as did your delay and resistance in cooperating with Eteros to return certain electronic information.



It now appears that you are carrying through with your vindictive threats to continue the project that you were working on while employed by Eteros. Eteros has recently discovered that less than three months after your departure from Eteros – on March 30, 2023 – your father filed articles of incorporation in New Hampshire for a new entity, October, and identified himself as October's sole president and director. These actions undertaken by your father were clearly designed to circumvent your noncompete restrictions in the Agreement – which prohibit you from engaging in certain competitive activities within Massachusetts for one year following the end of your employment with Eteros – and to conceal your initial involvement in the new venture. Indeed, in October's Annual Reports for 2024 and 2025, your name replaces your father's as October's president and director, and you are also identified as its secretary and treasurer.

Alarmingly, a review of October's website indicates that October is currently manufacturing and offering for sale a product – the "Ai Opto Sort 2.0" – that appears to be identical to the one you were in the process of developing while employed by Eteros. You have necessarily disclosed and used the Bloom assets and intellectual property purchased by Eteros in doing so, undermining the entire value of the Bloom acquisition. To make matters worse, the website's description and video footage of the Ai Opto Sort 2.0 reveals that, in commercializing this product on October's behalf, you also disclosed and used trade secret information independently conceived of and developed by Eteros before and during the time that you worked for the Company.

Your misconduct puts Eteros's trade secrets and other confidential information squarely at continued risk of imminent use and disclosure. This constitutes a violation of applicable trade secrets laws, as well as various other obligations that you owe to Eteros. For instance, the misappropriation of Eteros's trade secrets constitutes a violation of the Defend Trade Secrets Act, § 1839, which forbids, *inter alia*, the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" and "disclosure or use of a trade secret of another without express or implied consent." If Eteros is required to file a lawsuit against you based on any misappropriation of its trade secrets, it would seek recovery of multiple damages and its attorneys' fees from you personally.

All such misconduct *must stop immediately*.

Although Eteros's investigation into the circumstances of your departure from Eteros and role at October has just begun, in light of the information it has already learned, you have put Eteros in the position of needing to promptly determine what steps it will need to take to protect itself and its legitimate business interests from any further harm.



### <u>Opportunity to Minimize Damages and Potentially Avoid Litigation</u>

Eteros takes the promises you made in the Agreement and your continuing obligations under the law seriously, and it insists that you immediately cease and desist from all ongoing violations of the Agreement and state and federal law.[3]

At this juncture you have a choice: Assuming that Eteros does not discover that you have engaged in, or are continuing to engage in, additional violations of your contractual or legal obligations, we will work with you to determine if Eteros can adequately protect its legitimate business interests through an amicable and voluntary resolution. To that end, if you wish to explore whether it is possible to avoid litigation, please reach out to me by Thursday, May 8, 2025.[4]

Eteros reserves the right to pursue all necessary and appropriate remedies that it may have against you and any other potentially responsible parties. In particular, Eteros reserves the right to commence litigation against you to fully protect its legitimate business interests through full enforcement of the Agreement and injunctive relief preventing future breaches. Given that your actions have decimated the value of the Bloom acquisition, Eteros also reserves the right to commence litigation against you to recover the purchase price of that acquisition, including Eteros's recent payments to Bloom's shareholder group.

Please be advised that, given the likelihood of litigation, you are on notice that you must preserve all documents and information, including electronically stored information, that may contain evidence relevant to the above concerns. This includes, but is not limited to, emails, texts messages, and other electronic communications, electronically stored documents, recordings, calendars, and telephone records in connection with your termination of employment from Eteros and your new employment with October. Destruction of any relevant information – regardless of where it is stored or on what medium it may be maintained – will be considered spoliation of evidence for which Eteros will seek appropriate sanctions.

---

[3] As a threshold matter, for any (1) electronic files obtained during or through your employment with Eteros or (2) electronic files containing Eteros's trade secrets or other confidential information – regardless of where such files are stored (including on any of your personal devices, in a Dropbox account, or otherwise) – ***do not open or delete them or otherwise change the metadata associated with them***.

[4] If for any reason you do not intend to adhere to your obligations under the Agreement, please respond and explain your rationale.



This letter is not a waiver of any right that Eteros may have against you, October, or any other responsible parties, all of which are hereby expressly reserved.

Sincerely,

Stephen Riden

Enclosure